IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VICTOR WYATT,

      Plaintiff,                    No. CIV S-05-2025 EFB P

      vs.

CITY OF CHICO POLICE DEPT.,
et al.,

      Defendants.               ORDER

                              /

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.[1] The matter is before the court on a motion for summary judgment brought on behalf of defendant Lara. Dckt. Nos. 71-76. Plaintiff has filed an opposition and Lara has filed a reply.[2] Dckt. Nos. 82, 84. Also pending is plaintiff's motion for default judgment against

---

[1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to the parties' consent. *See* E.D. Cal. Local Rules, Appx. A, at (k)(3).

[2] Long after Lara's summary judgment motion was submitted, plaintiff continued to file exhibits and briefs, apparently in support of his opposition to the motion. *See* Dckt. Nos. 113-117, 119-121. The Local Rules do not contemplate such filings, timely or not, as they provide only for a motion, an opposition and a reply. E.D. Local Rule 230. Further, plaintiff neither sought nor obtained court approval to file such documents. Accordingly, the court has not

1

defendant Gama, which Gama opposes. Dckt. Nos. 107-109.

## I.     Background

This action proceeds on the March 19, 2007 second amended complaint. Dckt. No. 24. In relevant part, plaintiff alleges the following.

On June 16, 2002, defendant Gama struck plaintiff with her car while backing out of a parking lot, injuring plaintiff. *Id.* ¶¶ 1-2. Gama and another witness accused plaintiff of faking the accident. *Id.* ¶ 3. Plaintiff was taken to the hospital. *Id.* ¶ 5. Two officers entered plaintiff's hospital room, one of whom was defendant Lara. *Id.* While plaintiff was strapped to a gurney, and as the second officer stood by the door as a "look out," Lara "deceitfully engaged plaintiff into describing the incident in the parking lot." *Id.* After plaintiff described the incident, Lara stated, "That's not what the lady tells me. Besides I know the lady." *Id.* ¶ 7. Then, claims plaintiff, Lara pressed down onto plaintiff's sore injured areas causing him to scream. *Id.*

Subsequently, Lara allegedly drafted a false police report charging plaintiff with violating California Penal Code section 148.5 (false report of an emergency). *Id.* ¶ 13. Plaintiff, a parolee, was arrested, his parole was revoked, and he was returned to custody for seven months. *Id.* ¶¶ 15-16, 28. Gama participated in plaintiff's parole revocation hearing, where she allegedly admitted to having a "personal relationship" with Lara, and to striking plaintiff with her car while driving irresponsibly. *Id.* ¶ 20. Gama also, allegedly, admitted to telling Lara that she thought plaintiff was faking his injuries. *Id.* ¶ 21.

On December 12, 2002 plaintiff filed a complaint with the Chief of the Chico Police Department against Lara, for his "wilful interference with [plaintiff's] civil rights, assaulting, battering, threatening, [and] intimidating [plaintiff] while a victim in the hospital to aid[] a personal acquaintance escape liability." *Id.* ¶ 24. In December 2002, plaintiff also filed a civil rights lawsuit based on the conduct described above. *Id.* ¶ 27.

---

considered these filings.

2

1      On April 5, 2004, plaintiff was on his way to a copy store in downtown Chico. *Id.* ¶ 31.
2  Lara followed plaintiff in his patrol car, rolled down his window and threatened, "I'm going to
3  get you." *Id.*

4      On November 23, 2006, after plaintiff had initiated the instant lawsuit against Lara,
5  plaintiff was driving a friend home and noticed a patrol car following him. *Id.* ¶¶ 32-33
6  Plaintiff was then pulled over. *Id.* ¶ 36. The officer who pulled plaintiff over turned out to be
7  Lara, who recognized plaintiff as he approached plaintiff's car. *Id.* ¶ 38. However, plaintiff
8  claims that Lara pretended not to recognize plaintiff and called him by the wrong name of
9  "Eric." *Id.* ¶¶ 39, 42. Plaintiff contends that he informed Lara his name was not "Eric." *Id.* ¶
10 42. Plaintiff showed his identification to Lara, who then arrested plaintiff for giving a fake name
11 and lying to a police officer. *Id.* ¶ 43. Lara then forcefully placed plaintiff into the patrol car
12 and drove to the Chico Police station. *Id.* ¶¶ 43-44.

13     Plaintiff further claims that while at the police station, Lara ordered plaintiff to get out of
14 the car, but plaintiff was looking at the floor of the car, where he had dropped some money. *Id.*
15 ¶ 44. Lara then allegedly grabbed plaintiff's right leg and began to pull plaintiff out of the car.
16 *Id.* ¶ 45. Once Lara had removed plaintiff from the car, Lara "forcefully rammed" plaintiff
17 against the back of the patrol car and placed his hand over plaintiff's mouth to prevent him from
18 screaming and stated, "this is for your accident complaint." *Id.* ¶ 47. Lara is claimed to have
19 then forcefully walked plaintiff into the police station, where plaintiff was physically
20 overwhelmed by Lara and other officers who took plaintiff to the floor "gang style." *Id.* ¶ 48.
21 Plaintiff alleges that on the way down, he felt like he was being hit in the abdomen by Lara and
22 began to spit up blood. *Id.* ¶ 49. Plaintiff says he was then tied at the ankles and felt like the
23 officers were going to kill him. *Id.* ¶ 50. He claims that Lara then attempted to break plaintiff's
24 wrists and dislocate his shoulder. *Id.* ¶ 51. As a result, plaintiff claims that he had lower back
25 pain, an injured knee, and lacerated, bruised and swollen wrists. *Id.* ¶ 54.
26 ////

The court construes plaintiff's allegations as asserting the following claims against Lara:[3] 1) a state law battery claim, as well as a Fourth Amendment claim based on the 2002 touching in the hospital; 2) a fabrication of evidence claim based upon the allegedly falsified police report; 3) a Fourth Amendment claim based upon the 2006 traffic stop and arrest; 4) a Fourth Amendment claim and a retaliation claim based on the events alleged to have occurred at the Chico Police station.[4]

## II. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. "When reasonable minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

////

////

---

[3] While the court's November 20, 2007 screening order found that plaintiff had stated a cognizable claim against defendant Lara, it did not specifically identify each claim. Dckt. No. 31. The screening order also found that plaintiff had stated a due process claim against defendant Gama. *Id.*

[4] As Lara did not move for summary judgment on the battery or the retaliation claims, those claims will be resolved at trial.

4

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c), which was amended in 2007 to implement purely stylistic changes). If the moving party meets its initial responsibility, the opposing party must "set out specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate – through evidence in the form of affidavits and/or admissible discovery material – a factual dispute that is both material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party). Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11. Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. Fed. R. Civ. P. 56(c)(2). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255*; Matsushita*, 475 U.S. at 587. Nevertheless, as to inferences it is the opposing party's obligation to produce a factual predicate from which a favorable inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the

opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On February 1, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### III.    Lara's Motion for Summary Judgment[5]

####    A.    Lara's Statement of Undisputed Facts

#####       1.    The 2002 Events

Unless otherwise noted, Lara's statement of undisputed facts is supported by citations to the declaration of Lara signed under penalty of perjury, as well as by citations to plaintiff's deposition transcript. The evidence submitted by Lara establishes the following.

On June 16, 2002, Police Officer Jose Lara, accompanied by Officer Bartine, was dispatched to the parking lot of the Winco grocery store in Chico, with a report that a man had been struck by a car and was injured. Def. Lara's Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1, 3. Lara was informed that the man was lying on the pavement, claiming to need medical attention and that emergency medical personnel were responding to the

---

[5] As Officer Lara comments in his reply, plaintiff's opposition to the motion for summary judgment is "nearly completely unintelligible." Def.'s Reply at 3. Plaintiff does, however, ask that the court treat the operative complaint as a declaration, as it is signed under penalty of perjury. Pl.'s Opp'n at 4-5. Defendant opposes this request on the ground that it is "unclear which portions of the Second Amended Complaint . . . [are] based on personal knowledge." Def.'s Reply at 3. The court, however, finds no difficulty in concluding that plaintiff's allegations relating to events in which plaintiff was present, are based on plaintiff's presence at the scene and her claims of personal knowledge. Thus, while plaintiff did not submit evidence with his opposition, plaintiff's verified complaint may be used as an opposing affidavit under Rule 56(e), to the extent it sets forth matters based on his personal knowledge. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995).

6

scene. SUF 2. Upon his arrival at the Winco parking lot, Lara was told that the man had been treated at the scene, then was transported via ambulance to Enloe Hospital. SUF 4.

Officer Lara spoke with Terri Gama, the driver of the car that was involved in the collision. SUF 5. Gama said that before backing out of her parking space, she looked both directions and behind her to make sure the area was clear before she backed out. *Id.* Gama said that after she backed out a few feet, extremely slowly, she felt a bump against the left rear portion of her vehicle. *Id.* Gama then told Lara she immediately stopped, got out of the vehicle, and saw a man lying on the ground and claiming to be in severe pain. *Id.* Gama stated that she knew the accident did not cause a serious injury. *Id.* Gama told Lara that as she was checking on the condition of the man, witnesses approached her and stated the man had thrown himself at the rear portion of her vehicle and caused the collision. SUF 6. Gama then provided Lara with the names of three possible witnesses: Carine Nelson, Amanda Nelson, and Beth Knapp. *Id.*

Carine Nelson and her daughter Amanda Nelson, aged 10, then contacted Lara. SUF 7. Carine Nelson told Lara that she saw Gama's car slowly backing up from a parking space, and that the car was barely moving. *Id.* Nelson said that she saw the man "throw his body on the car" and that she thought the incident was "fake," that the man had intentionally walked into the vehicle. *Id.* Amanda Nelson said she saw the man look at Gama's car as it was backing out, and then throw himself at the vehicle. SUF 8. She told Lara that she did not think the man had been injured, and that she did not understand why he was claiming to be injured. *Id.*

Officer Lara was then advised that the man was Victor Wyatt ("plaintiff"), whom Lara knew from prior contacts to be on parole. SUF 9, 10. Lara and Bartine then went to Enloe Hospital to speak with plaintiff. SUF 11. When the officers contacted him, plaintiff was still strapped to a gurney, lying on his back. SUF 12. Lara told plaintiff that he was a police officer with the city of Chico, and that he was investigating the incident. SUF 13. He asked plaintiff to tell him what happened. *Id.* Plaintiff told Officer Lara he, plaintiff, was momentarily distracted as he was walking through the parking lot and that when he looked back in the direction in which

7

he was walking, he saw Gama's car backing into him.  SUF 14.

Officer Lara asked plaintiff where he was injured.  SUF 15.  Plaintiff told Lara the pain from the collision was quite severe to his lower back area.  SUF 16.  Plaintiff testified in his deposition that Lara went to plaintiff's left side where he was injured and touched plaintiff like he was attempting to search him or pat him down, asking "You hurt here?" and touched him in a manner that caused plaintiff to scream.  SUF 17; Def.'s Mot. for Summ. J., Decl. of Allison E. Goldsmith, Ex. A ("Pl.'s Dep.") at 120:10-16, 121:10-17.  Plaintiff further testified that Lara touched him on his left hip and abdomen area, in the same area that the tenderness from his back injury was centered.[6]  SUF 19; Pl.'s Dep. at 122-123:21-8.  Plaintiff also testified that Lara continued to touch him for five to seven minutes after plaintiff asked Lara to stop.[7]  Pl.'s Dep. at 122:7-15.

Lara told plaintiff what the two witnesses at the scene had told him about the collision.  Def.'s Mot. for Summ. J., Decl. of Lara ¶ 14 ("Lara Decl.").  Plaintiff responded that the information in the statements given by the witnesses was incorrect.  SUF 24.  When the doctor entered, Lara informed him that there were different versions of how the collision occurred.  SUF 25.  Lara and Bartine left the hospital as plaintiff was being examined.  SUF 27.

Officer Lara returned to the Chico Police Department and telephoned the last witness, Beth Knapp.  SUF 28.  Knapp told Lara she saw the car backing out "really slow."  SUF 28.  She

---

[6] In light of this testimony, the court rejects defendant's argument that plaintiff's deposition testimony contradicts the allegation in his complaint that defendant touched plaintiff's lower back.  See Def.'s Mot. for Summ. J., Mem. of. P. & A. in Supp. Thereof ("Def.'s P. & A.") at 4 (arguing that plaintiff's description of events in his deposition contradicts his allegation of being touched on the back because it is unlikely that Lara could have reached plaintiff's back).  The complaint and the deposition testimony are consistent in that plaintiff claims to have injured his back after being hit by a car, and that defendant's subsequent touching caused plaintiff to scream out in pain.  See Dckt. No. 24 ¶¶ 7, 9; Pl.'s Dep. at 122-123:23-18.

[7] Defendant's Statement of Undisputed Facts No. 22, that Lara stopped touching plaintiff when he was asked, is directly contradicted by the portion of plaintiff's deposition transcript cited by defendant in support of SUF 22.  See Pl.'s Dep. at 122:10-15 ("And when you asked him not to [touch you], what did he do?" "He continued . . . . [for] [f]ive to seven minutes.").

8

said she then saw the man continue to walk forward and watched as he "threw his body into the car." SUF 28. Knapp said she did not know either Gama or plaintiff and that it was her opinion that the man was responsible for the collision. SUF 28.

Before the collision, plaintiff did not know Gama, the Nelsons, or Beth Knapp and knows of no reason why any of the witnesses would have lied about what they witnessed. SUF 29-31; Pl.'s Dep. at 58:18-24, 127:23-25. Plaintiff believes that the only reason Amanda Nelson would have to lie about what she witnessed is that her mother may have coached her, because the Nelsons are of a different race than plaintiff. SUF 32. Based on the statements of all of the witnesses, it was Officer Lara's opinion that the collision was not an injury collision, but that plaintiff had made a false report of an accident, in violation of Penal Code section 148.5. SUF 33.

Officer Lara recorded the statements of plaintiff and the witnesses to the collision in his report, which he forwarded to the District Attorney's Office and to plaintiff's parole agent, Agent Palmer. SUF 34. Reporting contacts with law enforcement, including any arrests, was a condition of plaintiff's parole. SUF 35. Plaintiff was placed under arrest by Agent Palmer on July 1 for making a false report of an emergency. SUF 36. Plaintiff received a parole revocation hearing, at which Gama and Carine Nelson testified. SUF 37. Their testimony was consistent with their statements to Lara on the day of the accident. SUF 38, 39. Following the hearing, the decision was to revoke plaintiff's parole and return him to custody for seven months. SUF 40.

### 2. The 2006 Events

On November 23, 2006, Lara was on routine patrol, driving a marked Chico Police Department patrol vehicle. SUF 42. Lara saw a blue Ford vehicle make a left turn and noticed that the turn was unusual in that it was wide and when the vehicle completed the turn, it swayed back and forth within the lane. SUF 43. Lara followed the vehicle, which was in the left lane, clearly marked as a left turn only lane. SUF 45-46. Instead of making the required left turn, the

9

vehicle continued straight through the intersection. SUF 47. Lara activated his patrol vehicle's overhead lights and the vehicle stopped a short distance later. SUF 48. Lara walked up to the driver's side window and spoke with the driver. SUF 49. After some discussion,[8] Lara asked the driver, who he recognized as plaintiff, to step out of the vehicle and walk to the trunk area. SUF 53-54. Lara told plaintiff that he believed plaintiff had lied to him about his name and placed him in handcuffs. SUF 55-56. Dispatch advised Lara that plaintiff had a suspended license, which plaintiff knew about. SUF 58-59. Lara arrested plaintiff for giving false information to a peace officer, and for driving on a suspended license. SUF 60.

Plaintiff testified in his deposition that Lara forcefully walked him to the patrol car with one hand on plaintiff's elbow, and one hand in the middle of the handcuffs. SUF 61-62. Plaintiff further testified that he voluntarily walked to the patrol car, but was not walking quickly. SUF 62. Plaintiff testified that Lara placed him in the patrol vehicle by placing one hand on his shoulder, and one hand on top of his head, and by pushing down. SUF 63. Lara then transported plaintiff to the Chico Police Department. SUF 64.

At the Chico Police Department sally port, plaintiff seemed very angry. SUF 66. Plaintiff testified in his deposition that Lara pulled his right leg out of the car, but then plaintiff pulled his right leg back into the car.[9] SUF 68. Plaintiff further testified that Lara pulled him out of the car by his left leg. SUF 69. Plaintiff also testified in his deposition that Lara then had

---

[8] The nature of this discussion is disputed. Plaintiff claims that Lara intentionally called him by the wrong name even through he recognized plaintiff, and Lara claims that he did not immediately recognize plaintiff, and that plaintiff provided him with a fake name. *See* Dckt. No. 24 ¶¶ 38-39, 42; Lara Decl. ¶¶ 32-35. Additionally, Lara contends that plaintiff refused to provide I.D. However, in the portion of the deposition transcript cited by defendant to support this contention, plaintiff says that he was reaching for his I.D. but stopped because Lara reached for his gun at the same time. *See* SUF 50; Pl.'s Dep.152:6-25; *see also* Dckt. No. 24 ¶¶ 39-40.

[9] The assertion in Defendant's Statement of Undisputed Fact No. 67, that plaintiff would not exit the police car until Lara pulled on his legs, is directly contradicted by the portion of plaintiff's deposition testimony cited by defendant in support of SUF 67. *See* Pl.'s Dep. at 162:22-25 (answering "No," to the question "So until he grabbed your legs you were not getting out of the car; is that correct?").

plaintiff lean backwards over the trunk of the patrol car with one palm over plaintiff's mouth and another hand pressing back against plaintiff's sternum. SUF 74. Lara then walked plaintiff into the booking area. SUF 75. In the booking area, plaintiff still seemed angry and was still struggling with Officers Lara and Sheridan. SUF 76. Plaintiff was placed on the floor of the booking area so that he could be more easily controlled. SUF 77. Plaintiff testified in his deposition that a total of four officers lowered him to the ground. SUF 78. He testified that as he was being lowered, Lara had one hand on plaintiff's elbow, and one hand on plaintiff's shoulder. SUF 79. He further testified that the officer on his right side held his right shoulder and elbow. SUF 80. Plaintiff testified that a third officer had a hand on each of his shoulders and that a fourth officer controlled plaintiff's legs.[10] SUF 81-82. Plaintiff admitted that when he reached the ground, he was struggling and kicking. SUF 84. Plaintiff also testified that a plastic binding tie was placed around his ankles. SUF 85. He testified that once he was on the ground no one hit or kicked him and that the officers were just exerting pressure on him to keep him on the ground. SUF 86-87. Plaintiff further testified that he continued to struggle until a supervisor warned him that if he continued, he would be tased. SUF 88. Plaintiff was then raised off the ground, and does not allege that any unreasonable force was used against him after that point. SUF 89.

### B. Discussion

#### 1. 2002 Fourth Amendment Violation

Officer Lara argues that his contact with plaintiff in the hospital did not amount to a seizure under the Fourth Amendment because he had not restrained plaintiff when he took his statement regarding the incident in the parking lot, and only briefly touched plaintiff in an area near the region where plaintiff claimed to be injured. Def.'s P. & A. at 6. Assuming there was a

---

[10] Defendant's Statement of Undisputed Fact No. 83, that no one was punching plaintiff in the abdomen, is not supported by the portion of plaintiff's deposition transcript cited to by defendant. *See* Pl.'s Dep. at 175-177:6-18 (stating his belief that Lara was hitting him in the abdomen at the same time he was being taken to the floor).

11

seizure, Lara contends that the force used was *de minimus*, and therefore fails to rise to the level of a constitutional violation as a matter of law. *Id.* at 6-7.

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." "[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596-597 (1989). Thus, a seizure occurs when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). A claim of "excessive force in the course of making [a] . . . 'seizure' of [the] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388. Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The court must balance the nature and quality of the intrusion against the countervailing governmental interests. *Id.* at 396. "Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity, and other harassing and abusive behavior that rises to the level of unreasonable seizure." *Fontana v. Haskin*, 262 F.3d 871, 878-79 (9th Cir. 2001) (quotations and citation omitted).

As is apparent from the discussion above, plaintiff and Officer Lara testify to strikingly different versions of the same key events, yet each is a percipient witness claiming to have personal knowledge of the facts. Because cases involving police misconduct nearly always involve disputed factual contentions and turn on credibility determinations, the Ninth Circuit has "held on many occasions that summary judgment or judgments as a matter of law in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (2003) (quoting *Santos v. Gates*, 287 F.3d 849, 853 (9th Cir. 2002)). This is not to say that summary judgment in such cases can never be appropriate. But the court is mindful that where

the witness testimony conflicts as to material facts, credibility may not be determined on paper. Rather, when there are genuine disputes over material issues of fact, the credibility issues must be resolved by the fact finder at trial.

The court finds that there are disputed issues of material fact that preclude summary judgment on this claim. While defendant submits that he did not restrain plaintiff, plaintiff alleged in his verified complaint, that while strapped to a gurney in a hospital room, after being hit by a car, Lara stood "glowering" over him while another officer acted as a lookout at the hospital door. Dckt. No. 24 ¶ 5. Plaintiff claims Lara's touching caused him to scream in pain and that even after asking Lara to stop, Lara continued the touching for five to seven minutes. *Id.* ¶¶ 7, 9; Pl.'s Dep. at 122-123:7-18. It may well be that a fact finder will, at trial, refuse to credit this version of the facts. However, viewing the facts in the light most favorable to plaintiff, a jury could conclude that Lara, either physically or by a show of authority, intentionally restricted plaintiff's freedom of movement.

Officer Lara also contends summary judgment is warranted because the pressure he applied was minimal (equivalent to that used in pat search). Def.'s P. & A. at 6-7. However, Lara makes no showing as to why any pressure, even if minimal, was objectively reasonable under the circumstances. With no apparent countervailing governmental interest at stake, it is not at all clear on the record as it presently stands that the touching, even if minimal, was reasonable. Accordingly, summary judgment is inappropriate. If plaintiff's account is believed – that he was strapped to a gurney, sore from the car accident, that Lara began to pat him down, causing pain, while another officer acted as a lookout, and that Lara continued touching plaintiff for five to seven minutes after plaintiff requested that he stop – a jury could find that the force used was objectively unreasonable, even if also considered minimal. *See Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2001) ("[W]here there is no need for force, any force used is constitutionally unreasonable."); *see also Wilks v. Reyes*, 5 F.3d 412, 416 (9th Cir. 1993) (holding that a plaintiff may be entitled to nominal damages for a Fourth

Amendment violation based on excessive use of force even though he did not suffer actual damages or significant injury). Accordingly, this claim, as well as plaintiff's battery claim, will be resolved at trial.

### 2.   **Falsified Police Report**

Plaintiff alleges that Lara drafted a false police report charging plaintiff with violating California Penal Code section 148.5 (false report of an emergency). Dckt. No. 24 ¶ 13. As a result, plaintiff claims he was arrested, his parole was revoked, and he was placed in custody for seven months. *Id.* ¶¶ 15-16, 28. To prevail on such a claim, plaintiff must make a substantial showing of deliberate falsehood or reckless disregard for truth and establish that, but for the dishonesty, the challenged action would not have occurred. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002); *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995). There is also a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). To make out a claim for deliberate fabrication of evidence, plaintiff must show that Lara either: (1) continued his investigation despite the fact that he knew or should have known that plaintiff was innocent; or (2) used investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information. *See id.* at 1076. Officer Lara argues that he is entitled to summary judgment on the deliberate fabrication of evidence claim because plaintiff has no evidence showing that Lara's police report contained any falsehood. Def.'s P. & A. at 5. While plaintiff may dispute whether he threw himself onto the back of Gama's car, Lara asserts that plaintiff has no evidence to show that this is not what the witnesses told him. *Id.* The argument is well taken.

The court finds that there is no genuine issue of material fact with respect to this claim. The sum of plaintiff's argument is that he was the victim and the witnesses lied about what they saw. Pl.'s Opp'n at 2-5; Dckt. No. 24 ¶¶ 17, 22. Plaintiff also suggests that Gama's statement was "coached" by Lara, as the two knew each other prior to the car accident. Pl.'s Opp'n at 2

14

(claiming Lara had coached Gama's son in soccer); Dckt. No. 24 ¶ 11. However, in order to survive summary judgment, plaintiff must adduce evidence showing that Lara deliberately fabricated or falsified information in his report. To establish a genuine dispute in this regard, plaintiff must present evidence upon which a reasonable jury could rely to render a verdict in his favor on the issue. *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11. Plaintiff cannot support his claim with unsupported allegations and speculation of fabrication. There is simply no evidence that Officer Lara knew or should have known plaintiff was innocent or that Lara used coercive of abusive investigative techniques likely to yield false information. Moreover, there is no evidence that any portion of Lara's report was false. Lara is therefore entitled to summary judgment on this claim.

### 3.     **2006 Fourth Amendment Violations**

Plaintiff alleges Fourth Amendment claims based upon the 2006 traffic stop and arrest and the events alleged to have occurred at the Chico Police station.

A stop is justified if the police officer has a reasonable suspicion that a traffic violation has occurred. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Id.* at 1105 (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). Officer Lara contends that he had reasonable suspicion to stop plaintiff's car with the intention of ticketing him after witnessing plaintiff proceed straight through an intersection from a left turn only lane. Def.'s P. & A. at 2, 10; *see also* Lara Decl. ¶ 30. Plaintiff does not dispute that Lara observed him committing a traffic violation. Based on this undisputed fact there clearly was reasonable suspicion for the stop. Therefore, Lara is entitled to summary judgment on the claim that the traffic stop violated plaintiff's constitutional rights.

Next, Lara contends that the arrest was valid, as plaintiff refused to provide identification, falsely identified himself as "Eric," and was driving on a suspended license.

Def.'s P. & A. at 10. Whether plaintiff refused to provide identification or falsely identified himself is in dispute. However, it undisputed that plaintiff was driving on a suspended license. SUF 59-60. When an officer has probable cause to believe a person committed even a minor crime in his presence, the arrest is constitutionally reasonable. *Virginia v. Moore*, 553 U.S. 164, 171, 176 (2008). Because Lara had probable cause to believe that plaintiff was driving on a suspended license, in violation of California Vehicle Code section 14601, the arrest was lawful. Lara is entitled to summary judgment as to this issue as well.

However, there is also a claim of excessive force. An individual has the right to be free from the use of excessive force by a law enforcement officer even when that officer is making a lawful arrest. *Graham*, 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (original emphasis omitted); *see also Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996) ("[T]he Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest).

Plaintiff alleges that after Lara arrested plaintiff, he forcefully placed plaintiff into the patrol car. Dckt. No. 24 ¶ 43. As noted, determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Id.* It is undisputed that plaintiff voluntarily walked to the patrol car, while Lara had one hand on plaintiff's elbow, and the other hand in the middle of the handcuffs. SUF 61-62. It is also undisputed that Lara placed plaintiff in the patrol

16

1  car by placing one hand on plaintiff's shoulder, and one hand on top of plaintiff's head, and
2  pushing down. SUF 63. While plaintiff described the walking as "forceful," there are no
3  specific facts showing that the amount of force used was unreasonable. *See* SUF 62. Indeed,
4  even under plaintiff's own version, he was less than compliant. Because it appears from the
5  record that Lara used only the minimal force necessary to effect the arrest, Lara is entitled to
6  summary judgment on this claim.

7  Officer Lara contends further that the use of force at the Chico police station was
8  reasonable. Def.'s P. & A. at 10. According to Lara, he was left with no choice but to pull
9  plaintiff from the patrol car because plaintiff refused to exit, and because plaintiff pulled his leg
10 back into the car after Lara initially grabbed it. *Id.* at 10, 11. Lara also asserts that pushing
11 plaintiff against the trunk and covering plaintiff's mouth was not unreasonable, given plaintiff's
12 earlier resistance, and because it appeared to Lara that plaintiff was about to kick another officer
13 and spit on Lara. *Id.*; *see also* Lara Decl. ¶¶ 46-49. Lara contends that the decision to place
14 plaintiff on the ground and hold him in the booking area was also reasonable because plaintiff
15 admitted to kicking and struggling with the officers. Def.'s P. & A. at 10, 11. Further, Lara
16 asserts that plaintiff admitted in his deposition that no one punched him as he was taken to the
17 ground. *Id.* at 11. Finally, Lara contends the officers applied just enough pressure to keep
18 plaintiff on the ground and when plaintiff stopped struggling, they allowed him to stand again.
19 *Id.* at 11-12.

20 This claim presents a much closer call as to the propriety of summary judgment. Plaintiff
21 admitted in his deposition that after being asked to exit the patrol car, he asked if he could first
22 pick up a $10 bill he had dropped on the floor of the car. Pl.'s Dep. at 160-161:25-9; *see also*
23 Dckt. No. 24 ¶ 44. Plaintiff testified that immediately after this request, Lara reached in and
24 pulled plaintiff out of the car. Pl.'s Dep. at 161:2-16; *see also* Dckt. No. 24 ¶ 44. While plaintiff
25 admitted to pulling his leg back when Lara grabbed it for the first time, plaintiff did not admit
26 that he refused to exit the car. *Compare* Pl.'s Dep. at 161:21-25 *with id.* at 162:22-25; *see also*

1  Dckt. No. 24 ¶ 46 (describing Lara's actions as "unprovoked").  Additionally, plaintiff testified
2  that he only pulled his leg back to avoid being hurt by Lara.  *Id.* at 161:21-25.  Thus, although
3  Lara may ultimately prevail as to his version of the facts at trial, whether he engaged in
4  excessive force remains a factual dispute at this time.  According to plaintiff, immediately after
5  pulling him from the car, Lara slammed plaintiff against the back of the patrol car, choked
6  plaintiff around his neck and covered plaintiff's mouth with his hand, stating, "this is for your —
7  your accident lawsuit against Gama."  *See* Pl.'s Dep. at 162:9-21, 164:21-25, 165:19-23, 166-
8  167:14-25; *see also* Dckt. No. 24 ¶¶ 44-45, 47.  Further, plaintiff submits that as he was taken to
9  the ground in the booking area, Lara was punching him in the abdomen, causing plaintiff to spit
10 up blood.  Dckt. No. 24 ¶ 49; Pl.'s Dep. at 175-177:6-18.  As noted, defendant's Statement of
11 Undisputed Fact No. 83, that no one was punching plaintiff in the abdomen, is not supported by
12 the portion of plaintiff's deposition transcript cited to by defendant.  *See* Pl.'s Dep. at 175-177:6-
13 18 (stating his belief that Lara was hitting him in the abdomen at the same time he was being
14 taken to the floor).  On defendant's motion for summary judgment, the court is required to
15 believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in
16 plaintiff's favor.  Given the circumstances as described by plaintiff, if his testimony is believed a
17 jury could conclude that the force applied by Lara at the police station was not objectively
18 reasonable.  Accordingly, this claim, as well as plaintiff's retaliation claim, will be resolved at
19 trial.

20 **IV.    Plaintiff's Motion for Default Judgment**

21       In the November 20, 2007 order, the court found that plaintiff had alleged "that defendant
22 Gama colluded with defendant Lara, a police officer, to revoke plaintiff's parole.  This allegation
23 states a due process claim [under section 1983]."  Dckt. No. 31 at 2.  In doing so, the court
24 observed that section 1983 provides a means of redress to individuals who have been deprived of
25 federal constitutional or federal statutory rights by persons acting under color of state law, and
26 generally, private parties do not act under color of state law.  Dckt. No. 31 (citing 42 U.S.C.

§ 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988); *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991)).  The court also noted that private parties, if engaged jointly with state officials with respect to a challenged action, are acting under color of law for section 1983 purposes.  Dckt. No. 31; *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Price*, 939 F.2d at 708 (noting that "[a] person may become a state actor by conspiring with a state official . . . or by engaging in joint activity with state officials." ).

As discussed above, there is no evidence that Lara falsified the police report that led to plaintiff's parole being revoked, and Lara is therefore entitled to summary judgment on plaintiff's fabrication of evidence/due process claim.  Given the conclusion that Lara did not violate plaintiff's due process rights, plaintiff cannot maintain a claim that Gama, a private party, acted *jointly* with Lara to do the same.  There being no possibility that Gama was acting under color of state law for section 1983 purposes, plaintiff fails to state a claim against Gama.  Accordingly, plaintiff's claim against Gama is dismissed and plaintiff's motion for default judgment against Gama is denied as moot.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

## V.     Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant Lara's October 24, 2008 motion for summary judgment is:

    a.    GRANTED as to the fabrication of evidence claim and the Fourth Amendment claim based upon the 2006 traffic stop and arrest; and

    b.    DENIED as to the 2002 Fourth Amendment claim, and the 2006 Fourth Amendment claim, each alleging excessive force based on the events alleged to have occurred at the Chico Police station.  These claims, as well as plaintiff's battery and retaliation claims, will be resolved at trial.

2. Defendant Gama is dismissed from this action.

3. Plaintiff's September 18, 2009 motion for default judgment is denied as moot.

4. Plaintiff shall file and serve his final pretrial statement and any motions necessary to obtain the attendance of witnesses at trial within thirty days.

5. Defendant Lara shall file his final pretrial statement not later than thirty days after the filing of plaintiff's statement.

Dated: September 30, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE